## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

ANITA SUE WHORTON,   )
          )
    Petitioner,  )
          )
  vs.       )  **Case No. CIV-07-1012-HE**
          )
MILLICENT NEWTON-EMBRY, )
          )
    Respondent. )

### <u>REPORT AND RECOMMENDATION</u>

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking habeas relief from her state court convictions in Case No. CF-2003-172, District Court of Logan County. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition, a copy of the state court record which includes the trial transcript ("Tr."), and a copy of the original record ("O.R."). Petitioner has neither filed a reply nor sought an extension of time in which to do so, and thus the matter is at issue. For the reasons set forth below, it is recommended that the petition be denied.

### <u>Background</u>

On June 14, 2003, Deputy Thomas Kutay of the Logan County Sheriff's Department went to a trailer home belonging to Daryl Beckner to serve an Emergency Protective Order ("EPO") on Karen Watson.[1] Tr., pp. 16-21. Officer Kutay knocked on the door to the trailer

---

[1]Mr. Beckner had obtained the protective order against Watson in order to get her to move
(continued...)

and saw a woman later identified as Petitioner peering out a front window.  Tr., pp. 21-23.

Ms. Watson answered the door and as Kutay read the protective order to her, he observed in

plain view a glass pipe commonly associated with illegal drug use on a table inside the

trailer.  Tr., p. 23.  Because Kutay noticed a very strong chemical odor he associated with

anhydrous ammonia, he took Watson and Petitioner outside the trailer.  Tr., p. 24.  Kutay

requested assistance from members of the drug task force, and a search warrant was obtained

and executed.  Tr., p. 65.  During the search of the trailer and surrounding area, marijuana

and many items associated with the manufacture of methamphetamine were discovered as

well as a police radio scanner and a rifle.  Tr., pp. 45-50, 68-84, 88.

Petitioner was charged Case No. CF-2003-172, District Court of Logan County, as

acting jointly with Karen Watson in committing the following offenses: conspiracy to

manufacture methamphetamine (Count 1), possession of a precursor (anhydrous ammonia)

with intent to manufacture (Count 2), possession of a controlled dangerous substance

(methamphetamine) with intent to distribute (Count 3), possession of a firearm while in

commission of a felony (Count 4), possession of marijuana (Count 5), possession of a police

radio while in commission of a felony (Count 6), and possession of drug paraphernalia

(Count 7), all alleged to have occurred on June 14, 2003.  O.R., pp. 1-3.  A second page

information charged Petitioner of having been previously convicted of drug related felony

offenses in Case No. CRF-1990-115, District Court of Logan County.  O.R., p. 4.  A jury

---

[1](...continued)
out of his trailer.  Tr., pp. 124-25.

found Petitioner not guilty on Counts 1, 4, and 5, but guilty on Count 2 (possession of precursor with intent to manufacture, after conviction of a felony), Count 3 (possession of controlled dangerous substance (methamphetamine) with intent to distribute, after conviction of a felony), Count 6 (possession of a police radio while in commission of a felony), and Count 7 (possession of drug paraphernalia).  In accordance with the jury's recommendation, the district court sentenced Petitioner to ten years imprisonment, twenty years imprisonment, and two separate sentences of one year in the county jail, respectively, with all sentences to be served concurrently.  Response, Ex. 3 (Summary Opinion in *Whorton v. State*, Case No. F-2004-1197).

In her direct appeal to the Oklahoma Court of Criminal Appeals ("OCCA") Petitioner argued that (1) the trial court erred in admitting evidence of other crimes; (2) there was insufficient evidence to sustain her convictions; (3) she was denied her right to effective assistance of counsel; (4) the prosecutor engaged in deliberate misconduct; (5) the trial court erred in admitting evidence of Petitioner's prior conviction; and (6) cumulative error deprived her of a fair trial.  The OCCA rejected each of these claims and affirmed Petitioner's convictions and sentences.  *Id.*  Petitioner did not seek post-conviction relief. Petition, p. 4.

In her habeas petition, Petitioner raises the same six claims she presented on direct appeal.[2]  Respondent contends that Petitioner is not entitled to habeas relief pursuant to 28

---

[2]To the extent Petitioner has failed to recite specific facts or arguments in support of the claims raised in her petition, the undersigned has broadly construed the petition to incorporate the

(continued...)

U.S.C.§ 2254 because the OCCA's adjudication of the claims was not contrary to, nor an unreasonable application of, clearly established federal law or based on an unreasonable factual determination.

## **DISCUSSION**

### **Standard Governing Habeas Corpus Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may grant a writ of habeas corpus for factual and legal matters that have been adjudicated in state court only if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding.  28 U.S.C. § 2254(d)(1) and (2).  Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning.  *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result - not its rationale - is 'legally or factually unreasonable'").

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

_____

[2](...continued)
facts and arguments raised on direct appeal.

different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).

A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (quoting *Maynard*, 468 F.3d at 671). In conducting this deferential inquiry, the Court presumes that the state court's factual findings are correct, and the burden of rebutting this presumption by clear and convincing evidence is placed on the petitioner. *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004). Having applied these standards, the undersigned finds that the OCCA's adjudication of Petitioner's claims was neither contrary to nor an unreasonable application of clearly established federal law.

## I.   Other Crimes Evidence - Ground One

In her first ground for relief, Petitioner alleges that evidence of "substantial and significant other crimes" was erroneously presented to the jury resulting in the violation of her fundamental right to a fair trial. Petition, p. 6; Response, Ex. 1, p. 15. Although the petition does not identify either the "other crimes" evidence which was allegedly improperly

admitted, nor how such evidence fatally affected her trial, the undersigned has liberally construed the petition to incorporate Petitioner's argument raised on direct appeal that the following evidence of other crimes was admitted contrary to state law:  (1) evidence of another conspiracy; (2) evidence of another felony case pending against Petitioner; (3) testimony that several items found during the search are commonly used for stealing anhydrous ammonia; and (4) reference to other items as being "stolen."  Response, Ex. 1, pp. 15-20.[3]  In her direct appeal Petitioner relied on cases addressing Oklahoma rules of evidence.  *Id*.  The State argued on appeal that the challenged evidence was properly admitted under Oklahoma law, specifically under the doctrine of res gestae.  Response, Ex. 2, pp. 5-13.  Respondent likewise argues that the evidence challenged by Petitioner was properly admitted under state law and further that the admission of such evidence did not deny Petitioner a fundamentally fair trial.

The OCCA rejected this claim of improperly admitted evidence of other crimes. Noting that Petitioner failed to object at trial to all but one of the challenged references, the Court determined that "[n]one of the references directly implicated her in any other crimes"; that Petitioner was not surprised by any of the evidence[]"; and that Petitioner was not unfairly prejudiced by the admission of the challenged evidence.  Response, Ex. 3, p. 2.

Petitioner challenges the testimony by Daryl Beckner, the owner of the trailer being

---

[3]To the extent Petitioner complains that she did not receive a "*Burks* notice" regarding this evidence, she raises an error of state law which is not cognizable in a federal habeas action. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (reversing grant of habeas relief based on alleged erroneous admission of other crimes evidence in defendant's trial for the killing of his infant daughter).

used to manufacture methamphetamine, that "on or around" June 14, 2003, Beckner agreed

with Watson and Petitioner that they could use his house to manufacture dope in exchange

for providing him with dope, *i.e.*, "dope for dope." Tr., p. 140.  Petitioner claims that such

testimony constituted evidence of her involvement in a separate criminal conspiracy which

was improperly admitted under Oklahoma law.  On this issue, the OCCA specifically found

the following:

> Daryl Beckner's testimony that he had previously agreed to provide his trailer
> to [Petitioner] to cook methamphetamine, in exchange for some of the
> proceeds, could not reasonably have been construed by the jury as evidence of
> a separate conspiracy; [Petitioner] was not surprised by Beckner's testimony,
> as Beckner testified to the same effect at the preliminary hearing; furthermore,
> there was no prejudice as [Petitioner] was acquitted of any conspiracy (Count
> 1)[.]

Response, Ex. 3, p. 2 n.1.

Petitioner also complains that the prosecutor elicited evidence of other crimes by

asking Beckner the following question: "Now, you're the same Daryl Beckner that's charged

as a co-defendant or in a related case to [Petitioner]; is that correct?"  Tr., p. 118.  Beckner

responded "Correct."  *Id.*  Petitioner contends that this testimony, which came in without

objection, indicated Petitioner had been charged in another felony case.  Response, Ex. 1, pp.

16-17.  But the OCCA found that "Beckner's testimony that he was a co-defendant in a

'related case' did not clearly suggest to the jury that [Petitioner] herself was charged therein,

much less what she might be charged with[.]"  Response, Ex. 3, p. 2 n.1.

Petitioner alleges further that Agent Bondurant referred to other bad acts when he

testified about items found in a black purse, or "ante bag," allegedly belonging to Petitioner,

including binoculars, four flashlights, a set of digital scales, and two-way radios.  Tr., p. 83.

When the prosecutor asked about the significance of the flashlights, Bondurant stated:

> "Anhydrous ammonia you cannot purchase it unless you're a farmer, so people have to steal it who make methamphetamine.  So they get their radios, their binoculars, and I believe those are night vision binoculars, flashlights, sometimes tools and they sneak up and do some kind of covert operation, I guess, and steal anhydrous ammonia from the unsuspecting farmer or from a coop, the local coop.  So these are, it's common to see these, all these items together from people who are cooking and stealing anhydrous ammonia.

Tr., p. 83.  According to Petitioner, the prosecutor later focused on this improper evidence by discussing how items such as those found in the black bag are commonly used for stealing anhydrous ammonia.  Response, Ex. 1, p. 19 (quoting Tr., pp. 250, 254, 258).  The OCCA found that the challenged testimony "was a fair inference based on the witness's experience, and did not directly implicate [Petitioner] in a theft[.]"  Response, Ex. 3, p. 2 n.1.

Petitioner alleges she was also prejudiced by the prosecutor's reference to other stolen items, specifically, a gun found in a safe in the trailer and a vehicle trailer located on the property.  Response, Ex. 1, p. 19.  In rejecting this claim, the OCCA found that "the prosecutor never suggested that various stolen items, particularly a firearm, found at Beckner's trailer had been stolen by [Petitioner]."  Response, Ex. 3, p. 2 n.1.  The Court further found that "this evidence was harmless in any event, as the jury found that [Petitioner] did not possess the firearm (Count 4))."

To the extent Petitioner's claims in Ground One are based on alleged violations of Oklahoma law, such claims are not cognizable in this federal habeas proceeding.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to

reexamine state court determinations on state law questions."). Rather, the federal writ of habeas corpus reaches only convictions obtained in violation of the United States Constitution, laws or treaties. *See e.g., Mabry v. Johnson*, 467 U.S. 504, 507 (1984); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, state evidentiary rulings are subject to habeas reviews only if the rulings "rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotations omitted); *see also Smallwood v. Gibson*, 191 F.3d 1257, 1277 (10th Cir. 1999) (applying the same standard to review a state court's decision to admit evidence of prior bad acts). "In engaging in this fundamental fairness analysis, [the Court] must examine the proceedings as a whole." *Parker v. Scott*, 394 F.3d 1302, 1317 (10th Cir. 2005) (citation omitted).

Under this standard Petitioner has failed to demonstrate that she is entitled to habeas relief based on her claims in Ground One. First, as noted, Petitioner fails to include any argument or legal authority to support her claim that the admission of such evidence rendered her trial fundamentally unfair. In any event, the undersigned finds that the admission of the challenged evidence did not result in a fundamentally unfair trial. Beckner's testimony that he agreed to allow the two women to use his trailer to manufacture methamphetamine was certainly relevant to the criminal charges against Petitioner. The testimony that the items found at the trailer were commonly associated with stealing anhydrous ammonia for manufacturing methamphetamine was likewise relevant to the charges against Petitioner. Further, as the OCCA noted, the jury found Petitioner not guilty of the charges of conspiracy

and possession of a firearm, and therefore, she fails to demonstrate prejudice with respect to the evidence regarding an allegedly unrelated conspiracy or the firearm. Finally, as discussed *infra* in connection with Ground Two, there was substantial other properly admitted evidence to support the jury's finding that Petitioner was guilty of the crimes of which she was convicted – possession of a precursor (anhydrous ammonia) with intent to manufacture, possession of methamphetamine with intent to distribute, possession of a police radio while in commission of a felony, and possession of drug paraphernalia. The undersigned therefore finds that Petitioner has failed to show that the admission of the challenged evidence fatally infected the trial so as to render the trial fundamentally unfair. Accordingly, the OCCA's rejection of this claim on direct appeal was neither contrary to nor an unreasonable application of Supreme Court law. Petitioner is not entitled to habeas relief on this claim.

## II.    <u>Sufficiency of the Evidence - Ground Two</u>

In Ground Two Petitioner alleges that the evidence was insufficient to support her convictions on Counts 2, 3, 6, and 7. Petition, p. 8. Petitioner has again failed to support her habeas claim with any facts or arguments supporting her claim; however, on direct appeal she argued that "[t]he State failed to prove that [Petitioner] had actual or constructive possession over: (1) the precursor; (2) methamphetamine; (3) police radio; and (4) drug paraphernalia." Response, Ex. 1, p. 23. The OCCA rejected this claim on direct appeal, and citing *White v. State*, 900 P.2d 982, 986-87 (Okla. Crim. App. 1995), found that the evidence was sufficient to support Petitioner's convictions. Response, Ex. 3, p. 3.

In reviewing a claim questioning the sufficiency of the evidence, "the relevant

question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 319. Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998). In applying this standard, the Courts review is sharply limited; the Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F. 3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

Oklahoma follows the *Jackson* standard for evaluating claims of insufficient evidence to support a conviction. *See Easlick v. State*, 90 P. 3d 556, 557-559 (Okla. Crim. App. 2004) (recognizing that Oklahoma follows the "unified approach" adopted in *Jackson* in examining sufficiency of the evidence issues). Further, in Oklahoma, courts recognize there is no difference in the weight given circumstantial evidence or direct evidence. *Id.* at 559. Thus, sufficiency of the evidence claims are reviewed under a single, uniform standard, regardless of whether the evidence is wholly circumstantial or whether it is based in whole or in part on direct evidence. *Id.*

In this habeas proceeding, Oklahoma law defines the substantive elements of the

crime. *Jackson*, 443 U.S. at 324 n.16.  As argued by Respondent, under Oklahoma law, proof of the element of possession is required for each of the four offenses for which Petitioner was convicted.  Response, p. 6 (citing Okla. Stat. tit. 63, §2-401(G) (Supp. 2003); Okla. Stat. tit. 63, § 2-401(B) (Supp. 2003); Okla. Stat. tit. 21, § 1214; and Okla. Stat. tit. 63, § 2-405(B) (2001)).  Under Oklahoma law, possession can be either actual or constructive and can be proven with circumstantial evidence.  *White v. State*, 900 P.2d 982, 986 (Okla. Crim. App. 1995).  Possession need not be exclusive, as long as there is evidence the accused knowingly shared the right to control the substance.  *Id.*  Although mere presence in the area of the contraband is insufficient to prove possession, *Staples v. State*, 528 P.2d 1131, 1133 (Okla. Crim. App. 1974), constructive possession "may be proven if there are additional independent factors which show [the defendant's] knowledge and control of the drugs." *Carolina v. State*, 839 P.2d 663, 664-665 (Okla. Crim. App. 1992).  "Such independent factors may include incriminating conduct by the accused or other circumstances from which possession may be fairly inferred."  *Carolina*, 839 P.2d at 665 (citation omitted).  *See also* O.R., p. 101 (Instruction No. 34, "OUJI-CR 6-11," defining actual and constructive possession, sole and joint possession).

Contrary to Petitioner's claim on direct appeal that she was simply in the wrong place at the wrong time, the evidence adduced at trial, viewed in the light most favorable to the prosecution, shows more than Petitioner's mere proximity to the contraband found in the Beckner's trailer on June 14, 2003.  Officer Kutay testified that when he approached the trailer door to serve the protective order on Ms. Watson, he saw a woman, later identified as

Petitioner, look out the window, and after the door was opened by Ms. Watson, he observed in plain view a glass pipe commonly associated with illegal drug use. Both Petitioner and Watson were inside the living area when Kutay entered to effect an arrest. As he entered the residency, Kutay noticed a very strong chemical odor which in his law enforcement experience was associated with anhydrous ammonia, a component used in the process of making methamphetamine.

During the subsequent search of the trailer, officers found in plain view numerous items commonly utilized in manufacturing methamphetamine, including soda bottles, glass jars filled with unknown liquid, tubing, coffee filters, small baggies, several microwave ovens, and an unconnected video surveillance camera. Tr., pp. 73-82.[4] Numerous substances later identified as illegal drugs were in plain view throughout the trailer. Tr., pp. 73-82. An Oklahoma State Bureau of Investigation ("OSBI") criminalist testified that ten of the items he analyzed from the trailer tested positive for methamphetamine and one item tested positive for marijuana. Tr., pp. 109-12. Officers found a police scanner on a shelf in the living room that was operating and tuned to the Logan County Sheriff's radio frequency. Tr., pp. 49, 53-54, 85. About 20 yards from the trailer officers found two thermos containers inside a cooler emanating a strong odor that, based on their experience and training, indicated anhydrous

---

[4]Other items, such as hot plates, microwave ovens, coffee filters, cans of starter fluid, and muriatic acid were found in the cabinets or in a nearby closet. Tr., pp. 76-82. Lithium batteries were found in a brown briefcase. Tr., p. 84. Pseudoephedrine tablets, a bottle of Heet gas line antifreeze, and additional scales were found in a bedroom. Tr., p. 86.

13

ammonia.  Tr., pp. 73-74.[5]

Daryl Beckner testified that he had agreed with Watson and Petitioner that they could use his trailer to "manufacture dope for dope." Tr., p. 140.   He further testified that he had allowed Ms. Watson to stay at the trailer, that Petitioner was a frequent visitor, and that because they were causing him "trouble," he obtained a protective order to get Watson (and Petitioner) out of the trailer. Tr., pp. 124-25.[6]   According to Beckner, the black bag discovered in the living room belonged to Petitioner and  he had seen her carry the bag a week before the arrest.  Tr., pp. 138-40, 150.  The black bag contained a driver's license issued to Ms. Watson, Tr., pp. 52-53, and also contained night vision binoculars, four flashlights, two-way radios and digital scales.[7]  Tr., pp. 83, 138-40.

Additional relevant testimony concerning Petitioner's dominion and control over the illegal items and drugs was presented to the jury through the testimony of Tanya Tucker, the dispatcher for the Logan County Jail.  Ms. Tucker testified that a few days after Petitioner was arrested and placed in the jail, Petitioner asked Ms. Tucker to contact Agent Bondurant to find out about a bird she [Petitioner] had been bottle feeding in her "home" – which Petitioner described as "the house where she was arrested."  Tr., pp. 98-100.  Bondurant

---

[5]The criminalist testified that because the procedure involved in collecting anhydrous ammonia is dangerous, the OSBI does not test items for anhydrous ammonia.  Tr., p. 113.

[6]Beckner testified that he was not present at the trailer between June 11 and June 13, 2003, but he came to the trailer on June 14 to exchange one of his vehicles, and while he was there he noticed a glass pipe on the living room table and saw Petitioner and Ms. Watson asleep in the living room.  Tr., pp. 127-28, 135.

[7]Agent Bondurant testified that the slang term for such a bag is "ante" bag.  Tr., p. 83.

14

testified that during the search of the trailer, he observed a bird cage containing a bird.  Tr., pp. 101-02.

Petitioner testified that she went to Beckner's trailer the early morning hours of June 14, 2003, to help Ms. Watson pack her belongings, that she brought her bird into the trailer and that she fell asleep in the living room where Beckner and Ms. Watson were also asleep until Officer Kutay knocked on the door and Petitioner looked out the window.  Tr., pp. 194-95, 208-09, 211, 214-15, 220.  Petitioner testified that she was unaware of the drug paraphernalia and drugs in plain view in the living room and did not possess any form of drugs, drug paraphernalia or anhydrous ammonia on June 14.  Tr., pp. 195-96.

According to Petitioner, Beckner's testimony was "contradictory, unreliable and wholly unworthy of belief," and his testimony was doubtful because he had an agreement with the State to testify. Response, Ex. 1, p. 25.  However, the jury was informed of such agreement and had an opportunity to observe the demeanor of both Petitioner and Beckner during direct examination and on cross-examination.  The *Jackson* standard requires this Court to accept the jury's resolution of conflicting evidence including witness credibility, as long as such resolution is within the bounds of reason.  *See Grubbs v. Hannigan*, 982 F.2d 1483 (10th Cir. 1993).

Viewing the evidence, including the testimony of Daryl Beckner and Petitioner and other direct and circumstantial evidence, in the light most favorable to the State, the undersigned finds that there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Petitioner had knowledge and control of the anhydrous ammonia,

15

methamphetamine, police radio, and drug paraphernalia discovered in and around the trailer home on June 14, 2003, and was therefore guilty of the offenses in Counts Two, Three, Six and Seven.  Therefore, the OCCA's rejection of Petitioner's sufficiency of the evidence claim was not contrary to, or an unreasonable application of, clearly established Supreme Court jurisprudence, and Petitioner is consequently not entitled to federal habeas relief concerning this claim.

## III.   **Prosecutorial Misconduct - Ground Four**

Ground Four alleges that "[p]rosecutor misconduct in closing argument denied Petitioner's right to a fair trial."  Petition, p. 11.  Although Petitioner claims that the prosecutor made "highly prejudicial and improper remarks," Petitioner has failed to identify the offending comments.  *Id.*  Construing her claim to encompass the argument raised on direct appeal, Petitioner alleges that the prosecutor inflamed the jury's prejudices by repeated references to methamphetamine as "a very, very dangerous drug."  Response, Ex. 1, p. 31 (citing Tr. pp. 14, 56, 57, 63).  According to Petitioner, the following unobjected to statements by the prosecutor served to further inflame the jury's passion:

> Methamphetamine is one of the most harmful dangerous drugs out there and the reason we are here today is because of [Petitioner's] actions but it's not just us that was affected by this case.

> Consider Logan County Sheriff's Office was out there to make the arrest and there was testimony that even the Undersheriff went out there to help protect the scene while the agents searched this place.  The District 9 Drug Task Force agents suiting up in equipment so that they wouldn't be injured by the fumes and chemicals go out there.  Then the hazardous materials crews had to come in and clean up and destroy evidence that's seized during this.

Then the OSBI lab technicians get involved in having to receive and analyze evidence. And then there's the District Attorney's Office and the support staff and everyone whose [sic] got to process the file. And then the clerk's office and the judges and the court reporters and you and me. And as many of you recognized, this is not a victimless crime. Methamphetamine is dangerous.

Members of the jury, I respectfully ask that you consider everything that you heard and finds this defendant guilty and when decided on what's a fair punishment I would offer this, there were at least probably 50 people involved in this whichever way you get there with a number of years giver her one year for each of those persons.

Response, Ex. 1, p. 32 (quoting Tr., pp. 276-77).

The OCCA rejected Petitioner's prosecutorial misconduct claim, finding that the "testimony elicited about the inherent dangers of methamphetamine manufacturing, and prosecutorial commentary on the deleterious effects of the drugs, were not improper; the prosecutor did not ask the jury to punish [Petitioner] for anything beyond the direct effects of her own conduct." Response, Ex. 3, p. 3.

In a federal habeas corpus action, claims of prosecutorial misconduct are reviewed only for a violation of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) (citations and quotations omitted). To be entitled to habeas relief, Petitioner must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 643. This determination may be made only after considering all of the surrounding circumstances, including the strength of the state's case.

17

*See Darden*, 477 U.S. at 181-82; *see also Coleman v. Brown*, 802 F.2d 1227, 1237 (10th Cir. 1986).   Additionally, the fact that defense counsel did not object to the prosecutor's statements challenged by Petitioner is significant to the fundamental fairness analysis.  *See Walker v. Gibson*, 228 F.3d 1217, 1241 (10th Cir. 2000) ("Counsel's failure to object to many of the comments, while not dispositive, is relevant to a fundamental fairness assessment.") (citation omitted); *Trice v. Ward*, 196 F.3d 1151, 1167 (10th Cir. 1999) (same).

The Tenth Circuit has held that, "even '[a]n improper appeal to societal alarm typically does not amount to a denial of due process.'" *Duckett v. Mullin*, 306 F.3d 982, 990 (10th Cir.  2002) (quoting *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000)); *see also Brecheen v. Reynolds*, 41 F.3d 1343, 1356 (10th Cir. 1994) (holding "improper appeals to societal alarm" and requests for "vengeance for the community" do not amount to a denial of due process).

Upon review of the record, the undersigned finds that the comments did not render Petitioner's trial fundamentally unfair.  First, as previously discussed in connection with Ground Two, the State presented a very strong case against Petitioner.  *See Malicoat v. Mullin*, 426 F.3d 1241, 1256 (10th Cir. 2005) (noting that the strength of the state's case supported the conclusion that improper remarks aimed at inflaming the jury's passion did not rise to level of due process violation which warranted granting relief in a habeas proceeding).  Second, the majority of the prosecutor's argument is based on and supported by the record.  *See Malicoat*, 426 F.3d at 1256 (citing "the fact that the majority of the prosecutor's argument was based upon evidence in the record" in support of its conclusion that the

prosecutor's improper remarks did not merit habeas relief).  Third, the jury was properly instructed that closing arguments are not evidence, O.R. p. 67, and a jury is "presumed to follow its instructions."  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Moreover,  the challenged narrative was only a small part of the prosecutor's entire closing argument and cannot be seen as having influenced the jury to convict on grounds other than the evidence presented.  Finally, the prosecutor's statement was also appropriately directed toward the jury's assessment of the length of the sentence that could be imposed upon a finding of guilt and cannot be viewed as having prejudiced Petitioner since the jury recommended a much lesser sentence than that urged by the prosecutor.

In light of the evidence of Petitioner's guilt, both direct and circumstantial, the instructions to the jury to consider only the evidence presented, and the jury's recommendation of a less lengthy sentence than the prosecutor had urged, the undersigned finds that Petitioner has failed to show that the prosecutor's remarks so infected her trial with unfairness as to render Petitioner's conviction a denial of due process.  Thus, the OCCA's rejection of Petitioner's prosecutorial misconduct claim was not an unreasonable application of clearly established federal law.  *See Pickens v.  Gibson*, 206 F.3d 988, 997 (10th Cir. 2000) (federal court owes deference to state court's determination regarding prosecutorial misconduct even if state court's reasoning is not expressly stated).  Accordingly, it is recommended that habeas relief be denied on Ground Four.

## IV.   Ineffective Assistance of Trial Counsel - Ground Three

In Ground Three Petitioner alleges that she "was prejudiced by trial counsel's

deficient performance, which affected the outcome of the trial." Petition, p. 9.  As on direct appeal, Petitioner argues that trial counsel was ineffective for failing to object to (1) the admission of other crimes evidence as alleged in Ground One and (2) the instances of prosecutorial misconduct alleged in Ground Four. *Id.*; *see also* Response, Ex. 1, pp. 29-30. The OCCA denied Petitioner's ineffective assistance of trial counsel claims, and Respondent contends that Petitioner is not entitled to habeas relief based on these claims because the OCCA's rejection of such claims was in accordance with Supreme Court precedent. Response, pp. 14-18.

To establish that counsel was ineffective, a habeas petitioner must show (1) counsel's performance was constitutionally deficient and (2) counsel's deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Performance is deficient if counsel's "representation [falls] below an objective standard of reasonableness." *Id.* at 688.  Prejudice is shown if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.  Counsel's performance is evaluated from the attorney's perspective at the time the assistance is rendered and considered in light of all the circumstances prevailing at that time. *Id.* at 689.  There is a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.*

Petitioner first alleges that trial counsel was deficient for failing to object to the

alleged improper admission of other crimes evidence.   In rejecting this claim the OCCA applied the governing federal law, *Strickland*, *supra*, and noting that no error had been found in the admission of such evidence, the Court held that "trial counsel was not ineffective in failing to object to most of that evidence."  Response, Ex. 3, p. 3 (citing *Cruse v. State*, 67 P.3d 920, 923 (Okla. Crim. App. 2003)).[8]  As discussed in the context of Ground One, Petitioner has failed to demonstrate that the alleged other crimes evidence rendered her trial fundamentally unfair.  Therefore, Petitioner has not shown under these circumstances that the outcome of her trial would have been different had counsel objected to such evidence.

Nor can Petitioner prevail on her claim that counsel was ineffective for failing to object to the comments raised in her prosecutorial misconduct claim.  The OCCA concluded that because the Court found "neither error nor prejudice" as to the prosecutorial misconduct claim, "trial counsel's failure to object to these comments was not deficient performance." Response, Ex. 3, p. 3 (citing *Gilson v. State*, 8 P.3d 883, 926-27 (Okla. Crim. App. 2000)).[9] The undersigned has reviewed the challenged comments in connection with Petitioner's claim in Ground Four and, considering all of the surrounding circumstances, has determined that Petitioner has failed to show that the prosecutor's comments rendered her trial fundamentally unfair.  Clearly then, Petitioner cannot show that the outcome of her trial would have been different if counsel had objected.  Accordingly, Petitioner fails to show that

---

[8]The OCCA's supporting case citation indicates that it analyzed this claim of ineffective assistance of counsel under the governing standard in *Strickland v. Washington*, *supra*.

[9]As with the previous ineffective assistance claim, the OCCA's citation reflects application of the two-part test in *Strickland*, *supra*.

counsel rendered ineffective assistance in this regard.

Finally, Petitioner has failed to show that she was prejudiced by any of trial counsel's alleged deficiencies.   As discussed in Ground Two, the evidence fairly and fully supported the jury's finding that Petitioner committed the offenses charged in Counts Two, Three, Six and Seven.  Given the weight and strength of the evidence, the undersigned cannot say that OCCA acted unreasonably when it declined to grant relief based on the grounds of ineffective assistance of trial counsel.

Consequently the undersigned finds that the OCCA's adjudication of Petitioner's ineffective assistance of counsel claim was neither contrary to, or an unreasonable application of, the Supreme Court's decision in *Strickland v. Washington*, *supra*.  Petitioner is therefore not entitled to habeas relief in Ground Four.

## V.     Evidence of Petitioner's Prior Conviction - Ground Five

In Ground Five Petitioner alleges that the trial court violated Oklahoma law by admitting her prior conviction into evidence because it was over ten years old.  Petition, p. 11.  Although Petitioner provides no factual detail to support this claim, the record shows that Petitioner filed a motion in limine seeking to prohibit the State's inquiry about a 1991 prior felony conviction for purposes of impeaching Petitioner's testimony during her case in chief.[10]  Tr., p. 160.   At a hearing on the motion before Petitioner testified, certain

---

[10]The record shows that in 1991 Petitioner was convicted unlawful distribution of controlled dangerous substance within one thousand feet of a school, Case No. CRF-90-115, Logan County District Court.  Tr., p. 176; O.R., p. 4.  This sentence was discharged on February 18, 1994.  Tr., pp. 176-79.

discrepancies arose concerning the date Petitioner discharged this conviction. *Id.*, pp. 160-67; pp. 170-84. Ultimately, the trial court ruled that the fact that Petitioner had a prior felony conviction was admissible but the nature of the conviction (a drug offense) was prohibited. *Id.*, pp. 184-85.

The OCCA determined it was not necessary to decide whether Petitioner's prior felony conviction was stale for purposes of impeaching her testimony because evidence of the prior conviction "was properly admissible for purposes of sentence enhancement." Response, Ex. 3, p. 3 (citing Okla. Stat. tit. 21, § 2609; Okla. Stat. tit. 21, § 51.1 (Supp. 2002); Okla. Stat. tit. 62, § 2-401(D) (Supp. 2003); Okla. Stat. tit. 63, §2-412).

Respondent contends that in Ground Five Petitioner has alleged only a state law error which is not cognizable in a federal habeas action. The undersigned agrees. Petitioner references state law and has failed to articulate, either in her petition or on direct appeal, how the evidence that she had sustained a prior felony conviction violated her constitutional rights. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Shipley v. State*, 313 F.3d 1249, 1251 (10th Cir. 2002) ("[F]ederal habeas review does not extend to the correction of purely state law procedural errors that do not rise to the level of a constitutional due process violation . . ."). In any event, the OCCA's determination that evidence of Petitioner's prior conviction was admissible under state law for purposes of sentence enhancement is binding on habeas review. *Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002).

The undersigned finds that Petitioner has clearly failed to demonstrate in support of her claim in Ground Five that she was deprived of the right to a fundamentally fair trial or

any other constitutionally guaranteed right.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## VI.    Cumulative Error - Ground Six

Petitioner claims that the cumulative error arising out of the claims raised in Grounds One through Five of the petition entitles her to federal habeas relief.  Petition, p. 11, back of page. The OCCA rejected this claim on direct appeal, stating "because we find no error, there can be no error by accumulation."  Response, Ex. 3, p. 3.

The claims raised in Grounds One through Five of the petition have been reviewed and no error has been found meriting federal habeas relief.   In reviewing a claim of cumulative error, the court may only consider actual errors for purposes of determining whether a due process violation has occurred.  *See Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002) ("[A] cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.") (citation omitted).  *See also Workman v. Mullin*, 342 F.3d 1100, 1116-17 (10th Cir. 2003) ("Workman's sentence cannot be unconstitutional due to cumulative error because we have not found that the district court committed error.").  Therefore, the undersigned finds that Petitioner's cumulative error claim is without merit and recommends that Ground Six of the petition be denied.

## RECOMMENDATION

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied.  Petitioner is advised of her right to file an objection to this Report and Recommendation with the Clerk of this Court by the 18th day of June, 2009, in

accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives her right to appellate review of both factual and legal questions contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 29th day of May, 2009.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE